Good morning, my name is Susan Carson and I'm the Supervising Deputy Attorney General representing the State Defendant's Appellants in this matter. May it please the Court, Plaintiffs do not have a right of action under Section 1983 to challenge the amount of foster care maintenance payments they receive. Section 672 of the Adoption Assistance and Child Welfare Act, upon which they primarily rely, does not have the rights-creating language that is required under Gonzaga, such that it is clear and unambiguous that Congress intended to create an individual right in foster care parents. Let me ask you this, just to focus it a little bit more. You know, just even assuming that that might be the case, we still have to deal with price. That's correct. In terms of, as our Ninth Circuit precedent. But also, too, there's another case that's Cal Alliance of Child and Family Services v. Allenby, which is ahead of this case. Are you familiar with that case at all? Yes, I am, Your Honor, sorry. All right. And depending on how that case is decided, isn't that going to influence us, and they're going to be, they get a first stab? Well, my understanding, Your Honor, I did not argue that case. My colleague, George Prince, did. In that case, there was no challenge under 1983 in that case. Here, in the court below, Judge Alsup denied our motion to dismiss. In the case that was just heard recently, my understanding is the court prevailed on the substitution. Well, but the district court in that particular case found that the foster care provider reimbursement provision of the Child Welfare Act created a Federal right to payment for providing foster care that is enforceable through Section 1983, right? That's correct, Your Honor. And then subsequently found that the State was not in violation of the Child Welfare Act. And so we were not the appellants, and we did not challenge, separately cross-appeal our challenge, not 1983. But isn't that case going to have probably something to do with this case? No, I don't believe so, Your Honor, because the 1983 issue is substantial, and we've not waived it. So that was the case. That was also the case with regard to Sanchez and orthopedic. In orthopedic, the State won below, and so then the appeal was based on the substantive, the decision on the substantive merits and not the 1983 issue. But depending on whether they have a private cause of action, it just seems like it's going to have some bearing on this. Well, this Court has never decided whether there is a private right of action under 1983, and this is the first time the issue was before this Court. So I guess the other side is going to argue that Price would compel that there is a private cause of action, right? Well, I assume so. They did in their brief, and I can address Price now if you'd like me to. In Price, actually, there were four provisions of the Housing and Community Development Act at issue, two of which this Court determined had rights creating language and two in which it did not. And the provisions that this Court determined did create a private right of action were couched in language specifically that each grantee or city shall provide for reasonable benefits to any person involuntarily and permanently displaced. And that was in Section 104K. Five years later, Congress added to the Act Section 104D, and there's, in Price, there's a discussion of the legislative history in which Congress did not think that it was clear enough what their intent would be, and so added Section 104D to a sub-subsection 3 and listed precisely the monetary benefits which were to be provided to displaced persons. Well, I would like to focus on that as well. Let me ask you this. Is this case going to be determined by blessing, by determining the blessing factors? Well, a blessing, but with the overlay of Gonzaga for the first part of the blessing test. And so in Gonzaga, there was — Gonzaga was decided, and the Supreme Court noted, that some courts were confused what was actually required for the first prong of the blessing test. And some courts were saying — Well, let's spot you the first and the third prongs for the moment. Let me ask you about the second prong, and that is the — essentially the remedy that's being requested here. What do you understand the remedy being requested to be? The remedy here? Yes. Well, I'm not exactly sure at this point, Your Honor, because after the motion to dismiss was denied, the Court heard the substantive claim, and in that case determined — in that part of the case determined that the State had not considered the relevant factors, but did not give the plaintiffs all the relief that they sought, which was an actual increase. It couldn't go that far. It just said that you haven't shown that the State has considered the factors that are enuminated — excuse me. Did you understand the increase to be a universal or blanket increase, or was it a particularized and individual increase? Oh, a blanket increase to every foster care parent. There is nothing in the Act through 672 that talks about, first of all, payments to providers at all, except in 672B where they're mentioned saying in order for the State to recover money from the Federal Government for the foster care maintenance payments that it does make, that the child needs to be in a foster family home or in a child care institution, whether or not the payments are made to that institution or to that family or whether they're made to a placement agency. So there's no disagreement amongst the two of you as to whether we are considering a blanket increase versus an individual case-by-case determination? Well, actually, Your Honor, I would disagree that that's what you're considering at all. You're making a determination as to whether or not there's a private right of action under 1983. The merits of this case, the second half of the case, the plaintiffs draw to their — Well, if we're going to look at blessing in making that determination, it seems to me that it is quite relevant as to what the remedy being sought is because we have to determine whether you're going to tax the — and the word competence is used, but I'm not so sure competence is correct as so much the ability of the courts. If a particularized determination has to be made on a case-by-case basis, you are talking potentially thousands of cases flooding the Ninth Circuit courts. Right. The way you're phrasing it now, Your Honor, under the circumstances, our understanding is they are just challenging the amount that is paid. It is the same amount to every foster family depending on the child's age, as I understand it. So unlike the same act with regard to adoptive assistance payments, which is set forth in 673A3, where it says the state, you must negotiate with the adoptive parents and consider the needs of the child who is in your home and come to an agreement as to what the payments will be. There's no such language in 672, which governs foster care maintenance payments. In fact, the language of that provision says each state that has an approved state plan, you shall make foster care maintenance payments if two conditions are met, one or other of the conditions met, the child has been placed pursuant to a voluntary placement agreement, or there's been a judicial determination that staying in the home, the welfare of the child, and reasonable efforts have been made to keep the child in the home. And then we... So there's no dispute, again, to come back to my question, as between the two parties before us, that the request that is being, the relief that is being requested is, as you describe it, a universal determination as to the amount to be given on a per age basis with foster children, rather than a case-by-case or area-by-area determination. Right. Unlike 673, which covers payments that go to adoptive parents, which is made on an, was required to be on an individualized basis. I'm fine with your answer. I just want to know what it is. Okay. Okay. That is. And then when you look to 672B. So under Gonzaga, in order to figure out whether or not Congress intended, and that's the touchstone here, Congress intended to create an individual right, you must look at the text and structure. And first the court says, Gonzaga says, you must find rights-creating language. We have no rights-creating language. There's no focus on foster parents or foster care providers in 672. There is only a mention of the, a potential mention of them in 672B, which says that a child who's going to be qualified for these federal payments is either got to be in a foster care home or a foster care family home or in an institution. And then 672B.2 specifically mentions that the definition that defines foster care maintenance payments in 675.4 is limited to the items that are listed there. Not that there's a guarantee that all those items will be covered. But again, this is a spending clause provision in which the federal government will give the state money if it complies with certain provisions of the Act. There are further limitations on federal payments listed in 672D, which says that payments that are made on behalf of the child in a voluntary placement agreement may be made only if the state has fulfilled all the requirements in 622B.8. And there are a number of them listed about findings with regard to reasonable efforts and what the state has done to try to keep the child in a home. You know, I think under, you know, I'm inclined to agree with you under Gonzaga. And I think that, you know, that our deceased Chief Justice is probably turning his grave thinking that this would create a private cause of action. However, I think you're dismissive of price and what the precedential effect might be on us in the Ninth Circuit. Okay. Let me try to address your concerns, Your Honor. In price, as I started to say before, there were four provisions at issue. And the only provisions that the plaintiffs look to are the two provisions that specifically say, city, you've got to pay these benefits. And the language is that precise. You have to reimburse them for actual and reasonable moving expenses, security deposits, credit checks, and any other moving-related expenses, including interim living costs. The statute specifically says, is directing the city, which is in receipt of funds, federal funds under the, I'm sorry, I always get the act a little confused, the Home and Community Development Act, you have to make these payments. Then in subsection 4, it says, city, you must also provide compensation sufficient to ensure displaced families shall not bear, after relocation, a ration of shelter costs to income that exceeds 30 percent. That's very similar to the provision that the U.S. Supreme Court found was privately enforceable in the Wright case. Then in price, there were two sections which this Court said are not privately enforceable. One mandates one-for-one replacement of occupied and vacant, occupiable, low and Here, in this Act, there is no language in 672 that says, state, you must pay to foster parents or foster care institutions the following costs. Everything in 6, and also unlike 673, which has to do with adoptive assistance, which talks about, state, you must negotiate on a child-by-child basis and recognize the needs of the parents and the child and come up with a rate that you will pay that family. Well, are you at all concerned that there's no remedy here, if there isn't a private cause of action? Well, I'm concerned. I don't know if it's Well, is that a factor for us to consider? No, it isn't, because what the Court should look at is what is Congress's intent. And if you look at the entire Adoptive Assistance and Child Welfare Act, very clear that the intent of the Act is to, number one, help states keep children in their own homes, if that's possible, or further, to assist them in being adopted. The purpose of this Act is not to make sure that children stay in foster care families or that they stay long-term in those families. That's not the purpose of the Act, if you look at the Act, which Gonzaga tells us to do with text and structure. The fact that there isn't a remedy, that isn't for this Court to provide. That's for Congress to come up with. And when you don't have clear and ambiguous evidence in the text and structure of that Congress intended that there be an individual right to challenge something, then there is no remedy. And that's on Congress to change that. So in sum, there's nothing in the statutory provision that evidences Congress's clear and unambiguous intent to create a right in foster care parents here to challenge the payments that they receive. And if it is not clear and unambiguous, if there is any question — But I thought you told me that it was relatively unambiguous in the terms that it's a very simple, apparently, formulaic determination to be made that applies statewide. That it's not — it requires no individualized determinations. It requires no person-by-person, foster parent-by-foster parent determination. But it's just a blanket formula. What's so ambiguous about the criteria that are set forth in the statute when you read it the way you're reading it? Because I respectfully disagree, Your Honor. The question is, is the statute unambiguous in creating a right in these individual plaintiffs? Not whether or not — Is this the statute that says each grantee shall provide — shall provide for reasonable benefits?  That's in Price, Your Honor. This statute just says each State shall make foster care maintenance payments. Shall make foster care maintenance payments. If the State does certain things. So in other words, if a child does not — if the State does not make a judicial determination that a child that the State — that the State government workers have made reasonable efforts to keep the child in a home, or if the child is not placed because of a voluntary placement assignment, then the Federal government will not make these payments. No, the statute says foster care payments, which are payments to cover the costs of food, clothing, shelter, daily supervision, school supplies, et cetera, et cetera, and have very specific criteria. But that's a definitional statute that you need 672 to do, and if the State doesn't meet all the requirements in 672, the statute's very clear that we'll receive no money from the Federal government. But in the old days, we used to call it peri materia. That is, you've got to read these statutes as a comprehensive unit. The statute makes no sense if you don't refer to a definitional section or you don't rely on the definitional section to provide the relief, but you certainly provide it to look at what it means. You've more than used your time.  Thank you, Your Honor. I'm sorry. I didn't notice that she was having me over. May it please the Court. Rick Ballinger for the appellees. Your Honors, our position is that congressional intent with respect to whether there's a right couldn't be any clearer. Section 672. Well, I don't know how you can say that. Well, it doesn't say there's a private cause of action. That would be really clear. Well, we don't need it to say there's a private cause of action. That's 1983. Well, I know, but I'm kind of don't. So I don't mean to be glib. Hyperbole doesn't help. I certainly don't. It could have been clearer. So I think it's as clear, for example, as the provisions at issue in Price where they did list the specific factors and said that these, you know, the people are entitled to payments to cover credit checks. What is the remedy that you sought below? We sought an injunction requiring the State to make foster care maintenance payments as defined by the statute, and we also sought declaratory relief. And that relief would say what? So the declaratory relief would find that the State indeed is not making foster care maintenance payments as required by the statute that was issued. The injunction would have required the State then to go and make the payments that are required by the statute. And at that point, the judge declined to issue. And you say that those payments are determined by the universal formula to be applied by the district court in one case and that it requires no factual inquiry as to the relative relationship among foster parents throughout the State. Sort of, Your Honor. Actually, what we were really doing with asking for the State is supposed to go back and come up with rates, or I don't even know if they have to use rates, but it's the State's position under this statute to go and come up with a means of making foster care maintenance payments. But let me put it the other way, with the turn to flip the remedy to what hit the We all know that the State here has a lot of financial problem. What is it that the State did that what did they not take into account? What did they do wrong? So in this case, when the – now, this is really, I think, getting more toward the merits than whether there's a right. But in this case, the legislative history showed that when enacting the rates for foster family homes, which is who we represent, the State did not consider any of the factors. There's no evidence that the factors were ever considered. It's not really clear where the rates came up with, and they were sort of keyed into some necessity index that was and wasn't applied at times. But really, for the past 20 years, no one was able to show any evidence that these rates relate at all to the precise expenses that are required to be covered under 675, the definitional section, and then through 672. Now, why just in the – just one follow-up question. Why just in the general scheme of things, if they're getting money from the Federal Government, why shouldn't the Federal Government enforce it? Yes, Your Honor. So I think – if I may take a step back before I answer that question. When you look at the way this statute is written, Section 671 sort of says, you know, if a State wants to enroll in this program and start taking money from the Federal Government, come up with a plan that addresses a number of different policies. The very first one, by the way, is making these payments. You come up with that plan, the Secretary approves it, and now between the Secretary and the State, you're supposed to live up to your obligation, and the Secretary oversees that. Moving to 672 – and it's parallel to 673, which was at issue in the ASW case. 672 says, you States who have plans, you have enrolled in this program, you have plans approved, you States shall make these payments on behalf of the children. And that's where we're at here. If you're in your – oh, excuse me. I was just going to ask, when you're looking at blessings, why doesn't the fact that the applicable statutes only require California to be in substantial conformity render the benefit sections of 672A and 6754A vague and amorphous under the second prong of blessings? Yes, Your Honor. I think it's really important to look at how substantial conformity works. If you – the State cites it in their briefs. It's a statute that enables the substantial oversight. It's 42 U.S.C. section 1320A-2A. And the way substantial conformity works is it's a mechanism for supervising a State's compliance with its plan. So it really, I think – I would say goes more directly to whether the State is living up to its obligations under 671 and then through the plan that the Secretary approved. Separate and aside from that, the Congress came back and said, in addition to that – and that does include foster care maintenance payments, by the way – second, aside from that, Congress says, in addition to that, you States with plans approved shall make foster care maintenance payments.  So I would – our position is that substantial conformity is not directly relevant to the question of whether a State is complying with its obligations under 672 when that doesn't have so much to do with whether a State is or isn't in compliance with its plan. It's a State with a plan that then must make these payments. I don't know if I'm agreeing there.  Why isn't the federal government in a better position – if we're looking at a Catholic with a little c application of this act, why aren't we better off having the government make that determination, bring that litigation and make a comprehensive determination about whether there's substantial compliance? Because it seems to me that the minute you add substantial to the formula, then you have – you're adding a discretionary element, which normally is not exercised by the judicial branch, but is rather exercised by the executive branch. And why don't we get into those kinds of problems? Yes, Your Honor. That – I believe that's a problem at – in Souter. In the Souter decision, the plaintiffs were trying to enforce a provision of Section 671, I think several of them. And there the issue was, yes, there's the substantial compliance standard of measuring a State's compliance with its plan, and it's too general. It goes – you know, there's all these interests. There's no direct link. Under 671, the obligation is between the State and the Secretary. And that – I think that's an important difference between the ASW case, which was under 673, which, like 672, looks at a State and says, you States participating in this program, you shall make adoptive assistance programs. But when you have an individual cause of action, generally, it's because you have individual facts relative to a particular claim that need to be vindicated on an – on a case-by-case basis. And here it seems to me that given the position of both of the parties to this case, that what you have is not that, but that instead you have a broader question about whether the Act is being applied in such a way that one party, namely the Federal Government, could bring the proceedings and make that determination, or that administratively that determination could be made and the discretion exercised. Does it? Your Honor, I think the answer is that 1983 is the provision that allows individual – individuals to enforce their rights, the individual rights that they have. There's no doubt that we have the Secretary watching over the 671 program, and that's what the substantial compliance comes into. But here, where I believe if you – 672, when you look at 672 and the way it set up the structure of it, it's very analogous to the Medicare structure issue in the Wilder case, which said, you know, basically, participating states shall make payments that are reasonable and adequate to cover the necessary costs incurred by economically and efficiently run facilities. And the Supreme Court said, yes, that language says – now, there may be a question whether or not, you know, on the merits, whether they are or aren't living up to that When you're making payments, you know, on behalf of the patients to the facilities they go to, there's – it's really not – there's no one else that could be the beneficiary of that. And the situation is quite analogous here. What's the parade of horribles – what's to prevent a parade of horribles? The minute we say that an individualized cause of action exists to keep every foster family under the system to maintain their own individual action to enforce those rights. The parade of horribles – if the foster parents were allowed to enforce their rights? Once we say there's an individual cause of action, then every foster parent has the right under 1983 to come into court and argue about their individual rights, correct? Correct. What's to prevent that? Well, in this case, we – Yeah, that's – we've agreed to meet the courts and just be overwhelmed. Well, I would hope that the State would meet its obligations, and that's how the State would prevent that, would be to make the foster care maintenance payments. We've brought – Well, I think that's why we're supposed to be very cherry in creating private causes of action when Congress hasn't specifically stated it just for that very reason. And, you know, I guess from the standpoint, too, that if we said that there wasn't a private cause of action, this isn't a constitutional case. It's a statutory interpretation, and Congress could just come right back and say, oh, we meant to create a private cause of action and do that. It's a Section 1983 case. You're right. It's not a constitutional case. What Congress did do was they said, when we create a right or an entitlement, you don't have to wait for the executive to come in. You don't have to lobby Congress. What you do is you can take 1983 and you can come to court and you can say, you know, we foster parents, we take these children. And when the State doesn't pay us enough, as much as 44 percent increase is needed or more here, these foster parents – you know, the deal is the State participates. Foster parents take the State's children who the State's removed from their homes. Well, I don't doubt that there's very – that it's compelling on an emotional level. That's not – you know, I couldn't – you know, you don't have to preach to the choir on that. But still, creating a private cause of action is not something that we take lightly. And I think that Gonzaga, in my view, counsels against this in your case, but I'm still struggling with Price. If I may address your concern, I hope very – I want to make sure we get this exactly right. In Gonzaga, the issue of the statute was FERPA, and it was a provision that said, to the Secretary of Education, you, Secretary, shall not disperse funds to institutions that have a policy or practice of releasing records to people without written consent. And the problem with that is that, first of all, it only goes to the Secretary. It doesn't say that any individual has this right. And also on its face, it says an institution can decide not to do this and just forego some funding. That's different from Wilder. That's different from here. There's no – there's no similar leeway to the state. The statute plainly says, in both cases, participating states shall make these payments. Just as in the ASW case, the parallel provision here, participating states shall have foster adoption – excuse me – adoption assistance programs in place. I think when you look at the way this statute's laid out and you really focus on what's going on here, you have a state plan under 671. Once a state enrolls in the plan, they have these obligations, exactly as they do in Wilder, exactly as they do in ASW – different from those, of course. But it's different – it's also different, again, from Gonzaga. Or a case at the state sites, the 31 foster children, is another one that I think is actually instructive here. It goes quite at length describing how the substantial compliance works. Vis-a-vis there, it was another 671 attempt to get a provision of 671, a case review system. Well, do you think that – are you familiar with Alliance of Child and Family Services v. Allenby? Yes. I know the paper. And they're ahead of us in the – you know, they've already submitted, and we have rules. Like, do you think that this Court should wait to see what that decision says? My understanding is that this issue is not up in that opinion. When you say this issue. That whether or not there's a right of action – whether or not there's an enforceable right through 1983. I think that – Is the private cause of action? Is that – 1983 is the private cause of action here. And then – So what is the issue, then, in Cal Alliance? In Cal Alliance, my understanding from reading the briefs is that the district court denied the child care alliances. It was dismissed on summary judgment, basically, Your Honor. And then the alliance appealed on the merits. But what – I thought the district court found that the foster care provider reimbursement provision of the Child Welfare Act created a Federal right to payment. For providing foster care that is enforceable through 1983. She found that in – there was a motion to dismiss. And I thought that – and that was Judge Patel. That's Judge Patel. And she relied on Price. Correct. And so I don't – I don't see how both of you can just be so dismissive of that. I think Judge Patel's analysis was exactly right. And I think Judge Alsop's analysis was right as well. I think Price's is compelling. But I – Wait. I'm confused. Is Judge – Judge Patel's case was what? Judge Patel's case was the foster care alliance, which is institutional care providers. Our case is foster parents. But is it on appeal? It's on appeal as well. Yes. Well, that's what I – And so we had – so the – So I don't understand how you can say that they're different. So the confusion – the confusion is that we succeeded, the foster parents succeeded, and prevailed below. Yes, but they're on appeal. So that doesn't mean that – yes, they – okay, you could say – I mean, the Ninth Circuit has both of those cases. That one's ahead in the queue. And so what that case decides is going to be binding on this Court. And if it's related, we need to wait and see what it says. But the district court here relied on it. I mean, it followed its reasoning. The decision that there was a 1983 – a right enforceable under 1983, yes. Yes. Well, I apologize. I don't mean to – What I don't understand is how you can say that if there's a determination that affects the institutions as parties, that somehow we can say, well, the institutions may not have a right, but individuals do under the statute. Excuse me, Your Honor. I apologize. In California, there's two different statutes. So the one that gives the rates to the institutions, I believe, was found to be based on the factors. And so that – Are they similar factors? It's the exact same factors. Well, then I just think you're comparing apples and apples, I'm afraid. Okay. Are there any further questions? Are there any further questions of the appellant? Okay. The case just argued is maybe submitted for decision. That concludes the Court's calendar for this morning. The Court stands adjourned. Thank you.
judges: Lucero, Schroeder, Callahan